**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE:** | **) Case No.** 17-25033 JAD |
| Apex Cleaning Supply, Inc., | **) Chapter** 11 |
| **Debtor.** | **) Document No.** |

_____

**AMENDED CHAPTER 11 SMALL BUSINESS PLAN OF REORGANIZATION**

_____

**Donald R. Calaiaro, Esquire**
**CALAIARO VALENCIK**
**428 Forbes Avenue, Suite 900**
**Pittsburgh, PA  15219-1621**
**(412) 232-0930**

**DATED:** April 1, 2019

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE:** | **) Case No.** 17-25033 JAD |
| Apex Cleaning Supply, Inc., | **) Chapter** 11 |
| **Debtor.** | **) Document No.** |

## AMENDED CHAPTER 11 SMALL BUSINESS PLAN OF REORGANIZATION

**Apex Cleaning Supply, Inc.,** a Pennsylvania corporation and the Debtor-in-Possession, proposes the following Amended Plan of Reorganization ("Plan") pursuant to Section 1121(b) and (c) of the Bankruptcy Code ("Code"), 11 U.S.C. Section 1121(b) and (d).

## ARTICLE 1 - DEFINITIONS

For purposes of this Plan, except as otherwise expressly provided herein or unless the context otherwise requires, the following capitalized terms shall have the meaning set forth below:

**1.1** <u>Administrative Claims</u> shall mean a cost or expense of this case, including actual and necessary costs and expenses of preserving the Debtor's Estate, of operating the Debtor's business, and all Allowances approved by the Bankruptcy Court, including administrative expenses specifically enumerated in Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code

**1.2** <u>Allowed Claim</u> shall mean a claim against the Debtor to the extent.

**a.** A proof of such claim was:

**(1)** Timely filed; or

**(2)** Deemed filed pursuant to Section 1111(a) of the Bankruptcy Code; or

**(3)** Filed late with leave of the Bankruptcy Court after notice and opportunity for hearing given to the Debtor's counsel; and

**b.**    **(1)**    which is not a Disputed Claim; or

**(2)**    Which is allowed (and only to the extent allowed) by a Final Order, after objection, if any, and hearing; and

**c.**    **(1)**    With respect to any professionals seeking compensation in connection with this case, when said compensation has been allowed by Order of the Bankruptcy Court after notice and hearing as provided in the Bankruptcy Code.

1.3    <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court for the Western District of Pennsylvania located at 54th Floor, USX Tower, 600 Grant Street, Pittsburgh, Pennsylvania 15219 or any Court having jurisdiction to hear and determine appeals there from.

1.4    <u>Business Day</u> shall mean between 9:00 a.m. and 5:00 p.m. local Pittsburgh time on every day, except Saturdays, Sundays and national holidays.

1.5    <u>Claim</u> shall have the meaning set forth in Section 101(4) of the Bankruptcy Code.

1.6    <u>Collateral</u> shall mean any property in which the Debtor has an interest and which secures an allowed claim.

1.7    <u>Confirmation Date</u> shall mean the date when the clerk of the Bankruptcy Court shall have entered the Confirmation Order on the docket.

1.8    <u>Confirmation</u> Order shall mean the Order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Code.

1.9    <u>Consummation Date</u> shall mean the date on which (a) all or substantially all of the property to be transferred under the Plan is transferred; (b) the Debtor or any Successor to the Debtor assumes the business of the Debtor; and (c) distributions under the Plan are commenced.  The Consummation Date shall occur no later than sixty one

(61) days after the Confirmation Order becomes a Final Order.

**1.10**   Creditor shall mean any person having a claim against the Debtor that arose on or before the filing date or a claim against the Debtor's estate of a kind specified in Section 502(g)(h) or (I) of the Code.

**1.11**   Debtor shall mean **Apex Cleaning Supply, Inc.**

**1.12**   Disclosure Statement shall mean the Disclosure Statement of the Debtor, filed with and approved by the Court pursuant to Section 1125 of the Code.

**1.13**   Disputed Claims shall mean alleged claims against or equity interests in the Debtor listed as disputed, contingent or unliquidated on the Debtor's schedules or amended schedules for which a timely proof of claim is filed, or to which an objection has been timely filed within sixty (60) days after the confirmation date by a party in interest and which objection is not the subject of a Final Order or has not been withdrawn.

**1.15**   Effective Date of the Plan shall mean the sixty-first (61st) business day after the Confirmation Order becomes a Final Order, or such other prior date as the Debtor shall have substantially consummated the Plan within the meaning of Section 1101(2) of the Bankruptcy Code.

**1.16**   Filing Date shall mean **December 15, 2017,** the date on which **Apex Cleaning Supply, Inc.** filed its petition for reorganization with the Bankruptcy Court.

**1.17**   Final Order shall mean an order, judgment or decree of the Bankruptcy Court as to which **(a)** any appeal that has been timely taken has been finally determined or dismissed; **(b)** the time for appeal has expired and no appeal has been timely taken in accordance with Rule 8002 of the Rules of **Bankruptcy** Procedure and any applicable local procedural rule; or **(c)** an appeal has been timely taken, but such Order has not been

stayed by appropriate cash bond or equivalent under Rule 8005 of the Rules of Bankruptcy Procedure. The Consummation Date shall occur no later than sixty one (61) days after the Confirmation Order becomes a Final Order

**1.18**   <u>Plan</u> shall mean this Plan of Reorganization dated **April 1, 2019**, as the same may be amended or modified from time to time in accordance with the provisions of this Plan and Section 1127 of the Code, all addenda, exhibits, schedules, releases and other attachments hereto, all of which are incorporated herein by reference as though fully set forth herein.

**1.19**   <u>Priority Claim</u> shall mean any claim entitled to priority pursuant to Section 507(a) **(4) (for wages due within 180 days of filing) of** the Code to the extent it is an allowed claim; except for Priority Tax Claims.

**1.20**   <u>Priority Tax Claim</u> shall mean any claim entitled to priority pursuant to Section 507(a) (8) of the Code to the extent it is an allowed claim.

**1.21**   <u>Proponent of this Plan</u> shall mean the Debtor, **Apex Cleaning Supply, Inc., and** its sole member, **Mark Suchevits**

**1.22**   <u>Schedules</u> shall mean the schedules of assets and liabilities filed by **Apex Cleaning Supply, Inc.** with the Bankruptcy Court as required by Section 521 of the Code, and any amendments thereto as allowed by the Bankruptcy Court.

**1.23**   <u>Unsecured Claim</u> shall mean any claim other than an administrative claim; secured claim or a priority claim to the extent it is an allowed claim.

**1.24**   <u>Voting Date</u>   The date established by the Bankruptcy Court as the last date for submitting timely ballots to accept or reject the Plan of **Apex Cleaning Supply, Inc.,** the Debtor.

**1.25**  <u>Gender and Number</u> when used herein, words importing any gender may be applied to and include all persons; words importing the plural number may be applied to and mean a single person or thing, and words importing the singular number may be applied to and mean more than single person or thing.

**1.26**  <u>General Rules of Interpretation</u> unless otherwise defined herein, all terms used in this Plan shall have the meanings set forth in the Bankruptcy Code.

## ARTICLE 2 - CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS INTO CLASSES

| | | |
|---|---|---|
| **2.1** | **Class 1, Administrative Claims** | **[Unimpaired]** |
| **2.2** | **Class 2, United Bank** | **[Impaired]** |
| **2.3** | **Class 3, Community Bank** | **[Impaired]** |
| **2.4** | **Class 4, Financial Pacific Leasing** | **[Impaired]** |
| **2.5** | **Class 5, Enverto Investment Group, LLC**. | **[Impaired]** |
| **2.6** | **Class 6, Merchant Cash & Capital, LLC** | **[Impaired]** |
| **2.7** | **Class 7, Executory Contracts to be Assumed** | **[Impaired]** |
| **2.8** | **Class 8, Secured and Priority Tax Claims** | **[Impaired]** |
| **2.9** | **Class 9, General Unsecured Creditors** | **[Impaired]** |
| **2.10** | **Class 10, Equity Shareholders** | **[Impaired]** |

## ARTICLE 3 - DESIGNATION OF CLASSES

**3.1**    **Class 1** shall consist of all **Allowed Administrative Claims**, including Debts incurred since the Filing Date, professional fees as allowed by the Bankruptcy Court and United States Trustee's fees.

**3.2**    **Class 2** shall consist of **United Bank.** United Bank has claims arising out of 6 loans. They hold a blanket security interest on personal property, accounts receivable

and motor vehicles. During the Chapter 11 Bankruptcy, the Debtor and United Bank entered into a Cash Collateral Agreement, docketed at Docket Nos. 33, 48 and Orders approving the Agreement, docketed at Docket Nos. 59 and 79. The Debtor has agreed to treat United Bank's claim as fully secured.

3.3   **Class 3** shall consist of the claim(s) of **Community Bank** against certain vehicles of the Debtor. They originated a loan on February 22, 2013.  They filed POC # 11 in the amount of **$18,568.60**. They are secured to multiple vehicles and they have encumbrances on the Motor vehicles. The vehicles originally securing this loan were 4 Ford E- 350 Trucks/vans, a 2005, two 2011's, a 2012. One of the vehicles was recently destroyed and it was covered by insurance. The bank was a loss payee on the policy.

3.4   **Class 4** shall consist of the claims of **Financial Pacific Leasing** which has filed UCC statements on 9 carpet cleaners and various carpet cleaning equipment.   They are partially secured up to the extent of the value of the collateral which secures their claims. The Debtor projects the secured claim is **$20,000.00.**

3.5   **Class 5** shall consist of the claims of **Enverto Investment Group, LLC d/b/a Currency Capital** which has filed UCC statements on the Aztec industrial cleaners of the Debtor.    They are partially secured up to the extent of the value of the collateral which secures their claims. The Debtor projects the secured claim is **$20,000.00.**

3.6   **Class 6** shall consist of Merchant Cash and Capital LLC d/b/a Bizfi Funding. They have filed POC # 8 in the amount of **$43,174.00.** They have a junior lien on accounts receivables. Their loan was originated December 20, 2016.  Their lien is subordinate to United Bank's blanket Lien. Since United Bank is significantly undersecured, the Debtor believes that this creditor is wholly unsecured.

3.7    **Class 7** shall consist of the **Executory Contracts** of the Debtor. The Debtor

has a lease for 175 N. Beeson Avenue, Uniontown Pa 15425 for the rental of that

commercial space from the principal for a base net, net lease of **$6,000.00** per month.

The tenant is obligated to pay all real estate taxes, utilities and maintenance.

3.8    **Class 8** shall consist of the **Secured and Priority tax** claims of various

governmental units. The following claims have been filed.

**PRIORITY CLAIMS**

| Creditor | Total Amount Owed | (D)(L)(U) * |
|---|---|---|
| Pennsylvania Department of Revenue POC #4 | $14,040.23 | Disputed |
| The Ohio Department of Taxation POC #6 | $25,975.36 | Disputed |
| West Virginia State Tax Department POC #1 | $94,500.00 | Disputed as all claims based upon estimates |
| West Virginia State Tax Department POC #1- originally alleged to be secured; State Tax lien filed in Kanawha County, WV | $1,898.24 | Disputed as all claims based upon estimates |
| Internal Revenue Service POC #7 | $89,498.39 | Disputed as all claims based upon estimates |
| TOTAL | $214,168.80 | |

The Debtor disputes these claims and participation in class 8 will be only for the allowed

claims. The Debtor reserves the right to file objections to these claim.

3.9    **Class 9** shall consist of **General Unsecured Creditors** who had an allowed

claim against the Debtor as of **December 15, 2017**. This class is made up of **General**

**Unsecured Claims** in the approximate amount of **$1,110,681.21**. Some of the Creditors'

claims in this class are disputed. Participation in this class shall be limited to the amount

due as of **December 15, 2017**.  The claims in this class shall not include any late charges,

interest or attorney's fees after date of filing.   This class includes the undersecured

portions of the secured claims in classes 2, 4, 5 and 6.

3.10    **Class 10** shall consist of the **equity shareholders** of the Debtor. Mark

Suchevits is the only shareholder and member of this class.

## ARTICLE 4 - MEANS FOR IMPLEMENTATION OF THE PLAN

**4.1**     The Plan is to be implemented by the reorganized Debtor through payments form from the post confirmation operation of the Debtor.  The Debtor will continue in business as a commercial/industrial/residential cleaner.

**4.2**     <u>Vesting of Assets in Reorganized Debtor</u>  On the Effective Date of the Plan, by operation of this Plan and the Confirmation Order, all Assets of the Debtor and its estate shall be transferred to, and vest in, the Reorganized Debtor.

**4.3**     <u>Corporate Action</u>  All matters provided for under the Plan involving the corporate structure of the Debtor or the Reorganized Debtor, or any corporate action to be taken by, or required of, the Debtor or the Reorganized Debtor, shall be deemed to have occurred and be effective as provided in the Plan and shall be authorized and approved in all respects without any requirement of further action by the stockholders or directors of the Debtor or the Reorganized Debtor, pursuant to Section 1903 of the Pennsylvania  Business Corporation Law of 1988, as amended.

**4.4**     <u>Management of the Reorganized Debtor</u>     The Management of the Day to Day business affairs of the Debtor shall be conducted by Mark Suchevits who shall be employed as the President and Chief Executive Officer. Mark Suchevits has agreed that his post- confirmation salary for 2019 and 2020 will be $108,000.00.

**4.5**     <u>Litigation Necessary or Possible to Consummate Plan</u>.

(A)     Objections to claims, if any.

(B)     The Debtor may file Adversary Actions under 11 U.S.C. § 506 to determine the secured status of:

        1. Merchant Cash and Capital LLC;
        2. The Enverto Investment Group;

3. Financial Pacific Leasing; and
4. Bridgeway Capital.

(C)     Avoidance actions under chapter 5 of the Bankruptcy Code including but not limited to 11 U.S.C. §§ 547 and 548.

(D)     Actions to enforce the confirmed plan.

(E)     The post-confirmation Debtor shall be entitled to all defenses, rights and counterclaims against any Creditors without Allowed Claims in establishing the arrearages, or any amount due.

**4.6**   Escrow of any Disputed Claim.

(A)     At the time of distribution under the Plan, the Debtor may pay into an escrow account any payment(s) for disputed creditors until such time as a final order allowing that claim is entered.

(B)     The Debtor may escrow any payment to any creditor if there is a possible claim or setoff that may be asserted against that creditor.

(C)     The escrow account shall bear interest.   If the disputed creditor is unsecured, the interest shall be the property of the estate.

**4.7**   Miscellaneous.

(A)     All causes of action, all avoiding powers, and all choses in action of any type which were the property of the Debtor at the time of the commencement of this case shall remain the property of the Debtor under this Plan until administration of the estate is complete.

(B)     The Debtor shall have the right to negotiate with any administrative claimant, any secured Creditor, or any disputed Creditor, or any account receivable to discount or settle any dispute.  The Debtor will not need Court approval to discount or

settle any claim(s) after the confirmation of the Plan

(C)     The Disbursing Agent for classes 8 and 9 shall be Donald R. Calaiaro, and he shall be entitled to compensation and reimbursement for costs as incurred on a monthly basis.  He shall be paid $375.00 per month beginning the Plan Effective Date plus any actual expenses incurred in the execution of his duties.

(D)     All available funds for disbursement to Classes 8 and 9 will be made on a monthly basis to the Disbursing Agent. Distributions to class 8 shall be made on a monthly basis and distributions to Class 9 claims will be distributed on a quarterly basis.

(E)     Once a payment is made into the Disbursing Agent it becomes the property of the Creditors and no longer property of the Debtor.

<u>**ARTICLE 5 - PROVISIONS FOR CLAIMS AND EQUITY
SECURITY INTERESTS GENERALLY**</u>

**5.1**     At the time the Confirmation Order becomes a Final Order, the Debtor and the Reorganized Debtor shall be deemed to have the benefits and effects of Code Section 1141(a) and (b).

The Reorganized Debtor shall be deemed to have the benefits of Code Section 1141(c) and the Debtor shall be deemed to be fully discharged and released pursuant to Code Section 1141(d) (1) (A) [discharge of debts] and the rights of Class 9 shall be terminated except as provided for in the Plan and as provided by Code Section 1141(d)

**5.2**          In the event that the claim of any creditor is contingent, unliquidated or subject to dispute prior to the confirmation date, the Debtor or the Creditor may, in their sole discretion, request the Bankruptcy Court to estimate for the purpose of allowance under Section 502 of the Code, as soon as practicable prior to the confirmation date, **(a)** any disputed, contingent or unliquidated claim, the fixing or liquidation of which,

as the case may be, would unduly delay the administration of this Chapter 11 case, and

**(b)** any right to payment arising from a right to an equitable remedy for breach of

performance.

Any Disputed Creditor, who has not sought the right to vote an estimated amount

prior to a hearing on the confirmation, shall not be entitled to vote upon this Plan of

Reorganization.

5.3    **Post confirmation Injunction**    All entities that hold a claim against the

Debtor are enjoined from taking any actions on account of any such claims, debts of

liabilities:

A.    Commencing or continuing in any manner any action or other proceedings

against the Reorganized Debtor, Debtor's Estate or any property included in that estate,

unless there has been a material default under the Confirmed Plan.

B.    Enforcing, attaching, collecting or recovering in any manner any judgment,

award, decree or order against Reorganized Debtor, Debtor's Estate or any property

included in that estate, unless there has been a material default under the Confirmed

Plan.

C.    Creating, perfecting or enforcing any lien or encumbrance against the

Reorganized Debtor, Debtor's Estate or any property included in that estate, unless there

has been a material default under the Confirmed Plan.

D.    Taking any action which is inconsistent with the Confirmed Plan.

### ARTICLE 6 - TREATMENT UNDER THE PLAN
### AND PROVISION FOR PAYMENT

6.1    **Administrative Claims**. The Class 1 claims, to the extent that they are

allowed administrative claims, shall be paid their principal claim in full without interest on

or before the distribution date by a cash payment to the holder of such a claim except as provided below or as otherwise agreed by each member of the class of persons in this class.  Professional persons in Class 1 whose claims have been finally approved and allowed by the court pursuant to Code Section 330 or 503 shall be paid on the Plan Effective Date.  The professional persons and the Debtor may agree to pay these allowed fees over time with interest and the Debtor may grant a security interest in its assets to insure these payments.

 **6.2**  **Class 2– United Bank.**  The Class 2 claims held by United Bank shall be treated as fully secured under this Amended Plan. The entirety of all obligations of the Debtor will remain collateralized by all of the property of the Debtor pursuant to the terms of the Final Cash Collateral Orders entered on February 8, 2018 and March 6, 2018. Debtor shall execute such documentation as may be required to maintain perfection of United Bank's security interests.

 **6.2.**1  United Bank's loan is collateralized by asserts in this case and by assets owned by the individual, Mark Suchevits. Under this Amended Plan, the Debtor, in this case as well as Mark Suchevits in the related case will pay United Bank a total of $6,600.00 a month. United Bank will retain the unfettered right to apply the balance of such monthly payments, above the $2,500.00 applied to the real estate loan of Mark Suchevits, in any manner and to any loan as they decide.

 **6.2.2**  Debtor and United Bank have agreed to a 6.86% interest rate will be used in respect to all debts to United Bank.

 **6.2.3**  All debt owed to United will balloon and become due five (5) years after the Plan Effective Date. At that time, United Bank may consider extending the term

based upon payment history and other compliance with bank loan terms.

**6.2.4** United Bank will permit the Debtor to sell or dispose of older vehicles provided that the proceeds are used towards the purchase of replacement vehicles provided United is granted a first lien on the purchased vehicle. United Bank agrees to release its liens on these older vehicles as they are sold or disposed of, subject to the previous limitations.

**6.3** **Class 3 Community Bank** the Class 3 member's claims, to the extent they are allowed shall be paid in full over 5 years at 5% interest.  Class 3 is impaired and entitled to vote.

The Debtor will deliver the insurance on the vehicle, which was destroyed and covered by insurance to Community Bank. Community Bank will apply that amount to the principal due. Any remaining balance will be re-amortized by the Debtor over **five (5) years**. The "Modified Secured Claim" will accrue post-confirmation interest at **5%** simple interest per annum for the life of the modified obligation.

**6.4** **Class 4 Financial Pacific Leasing**   The Class 4 claims of Financial Pacific who is believed to be undersecured. They have 2 separate loans.  To the extent they have secured claims, the claims will be modified into a "Modified Secured Claim" for the unpaid principal, interest and other amounts due as of the Plan Effective Date. This amount shall be the "Modified Secured Claim."

**6.4.1**     The "Modified Secured Claim" shall be treated pursuant to the provisions of the Section 1129(b) (2) (A) of the Bankruptcy Code as follows:

A. This secured creditor will realize the indubitable equivalent of its allowed Modified Secured Claim" on the date of distribution as provided in the Plan;

B.  This secured creditor will receive treatment of its "Modified Secured Claim" in a manner consistent with the Bankruptcy Code:

(1)  It will receive its "Modified Secured Claim" as allowed by the Bankruptcy Code, after modification and deduction for all credits for post-petition adequate protection payments;

(2)  It is impaired under this Plan.

C.  This secured creditor has encumbrances and all perfected encumbrances such lien will be retained, as to the Reorganized Debtor, as modified, until this secured Creditor is paid the "Modified Secured Claim";

D.  The Debt will be modified and restructured into a single debt under this Plan.

**6.4.2**  The Debtor will institute an adversary action under 11 U.S.C. § 506 to determine that Financial Pacific Leasing is secured to the extent of $20,000.00. The Amount agreed upon by the parties or the amount adjudicated to be secured by the bankruptcy Court will be the "Modified Secured Claim".

**6.4.3**  The "Modified Secured Claim" due, will be re-amortized by the Debtor over **five (5) years**. The "Modified Secured Claim" will accrue post-confirmation interest at **5%** simple interest per annum for the life of the modified obligation.

6.5  **Class 5 Enverto Investment Group, LLC.**  The Class 5 claims of Enverto Investment Group, who is believed to be under-secured. They have 2 separate loans.  To the extent they have secured claims, the claim will be modified into a "Modified Secured Claim" for the unpaid principal, interest and other amounts due as of the Plan Effective Date. This amount shall be the "Modified Secured Claim."

**6.5.1**  The "Modified Secured Claim" shall be treated pursuant to the provisions of the Section 1129(b) (2) (A) of the Bankruptcy Code as follows:

A.  This secured creditor will realize the indubitable equivalent of its allowed

Modified Secured Claim" on the date of distribution as provided in the Plan;

     B.  This secured creditor will receive treatment of its "Modified Secured Claim" in a manner consistent with the Bankruptcy Code:

        (1)  It will receive its "Modified Secured Claim" as allowed by the Bankruptcy Code, after modification and deduction for all credits for post-petition adequate protection payments;
        (2)  It is impaired under this Plan.

     C.    This secured creditor has encumbrances and all perfected encumbrances such lien will be retained, as to the Reorganized Debtor, as modified, until this secured Creditor is paid the "Modified Secured Claim";

     D.    The Debt will be modified and restructured into a single debt under this Plan.

     **6.5.2**    The Debtor will institute an adversary action under 11 U.S.C. § 506 to determine that Enverto Investment Group, LLC is secured to the extent of $20,000.00. The Amount agreed upon by the parties or the amount adjudicated to be secured by the bankruptcy Court will be the "Modified Secured Claim".

     **6.5.3**  The "Modified Secured Claim" due, will be re-amortized by the Debtor over **five (5) years**. The "Modified Secured Claim" will accrue post-confirmation interest at **5%** simple interest per annum for the life of the modified obligation.

     **6.6 <u>Class 6 Merchant Cash and Capital LLC d/b/a Bizfi Funding</u>** The Class 6 claims of Merchant Cash and Capital LLC d/b/a Bizfi Funding who is believed to be wholly undersecured. To the extent they have secured claims, the claim will be modified into a "Modified Secured Claim" for the unpaid principal, interest and other amounts due as of the Plan Effective Date. This amount shall be the "Modified Secured Claim."

     **6.6.1**    The "Modified Secured Claim" shall be treated pursuant to the provisions of the Section 1129(b) (2) (A) of the Bankruptcy Code as follows:

A. This secured creditor will realize the indubitable equivalent of its allowed Modified Secured Claim" on the date of distribution as provided in the Plan;

B. This secured creditor will receive treatment of its "Modified Secured Claim" in a manner consistent with the Bankruptcy Code:

(1) It will receive its "Modified Secured Claim" as allowed by the Bankruptcy Code, after modification and deduction for all credits for post-petition adequate protection payments;

(2) It is impaired under this Plan.

C. This secured creditor has encumbrances and all perfected encumbrances such lien will be retained, as to the Reorganized Debtor, as modified, until this secured Creditor is paid the "Modified Secured Claim";

D. The Debt will be modified and restructured into a single debt under this Plan.

**6.6.2** The Debtor will institute an adversary action under 11 U.S.C. § 506 to determine that Merchant Cash and Capital LLC d/b/a Bizfi Funding is secured to the extent of $0.00. The Amount agreed upon by the parties or the amount adjudicated to be secured by the bankruptcy Court will be the "Modified Secured Claim". If they are unsecured, their claim will be treated in Class 9.

**6.6.3** Any "Modified Secured Claim" due, will be re-amortized by the Debtor over **five (5) years**. The "Modified Secured Claim" will accrue post-confirmation interest at **5%** simple interest per annum for the life of the modified obligation.

**6.7**    **Class 7 Executory Contracts of the Debtor** The executory contracts of the Debtor with Mark Suchevits include the monthly lease of Beeson Avenue. These leases shall be assumed upon confirmation of this plan. All Pre-confirmation defaults will be waived.

**6.8**    **Class 8 Secured & Priority Tax Claims** The priority tax claims, as defined

by article 3.7 of this Plan, Pursuant to Code Section 1129 (a)(9)(c), the Class 11 claims shall be paid in full; to the extent they are allowed priority claims, they shall be paid 100% of its principal and interest at the respective statutory interest rates under this Plan of Reorganization. The first payment will be made on the Plan Effective Date.  The Debtor will make 60 equal payments to the taxing bodies. The lien(s) of the taxing bodies will be retained until they have been paid in full.  Notwithstanding the above provisions or the Confirmation of this Plan of reorganization, The Debtor reserves its rights under Section 505 of the Bankruptcy Code to seek a determination of the validity, secured status or priority of any tax claim filed a pre-petition claim or as an administrative tax claim.

      **6.9**    **Class 9 Unsecured Claims** The allowed unsecured claims of the Debtor will be paid a dividend of approximately 10% or $100,000.00 in 60 equal payments of approximately $1,666.67 plus any Disbursing Agent fee and costs. The first payment to Class 9 will be made on the Plan Effective Date. All payments to Class 9 shall be paid to the Disbursing Agents, who shall make regular distributions to Class 9.  The Disbursing Agent shall deduct the costs of distribution and the disbursing agent's fees. The Disbursing agents shall disburse the remaining funds to Class 9 on a quarterly basis. Class 9 shall not receive interest on their claims.

      **6.9.1**    **Disputed claims in Class 9.**   The Disbursing agents shall escrow any funds due to a disputed claimant in Class 9 until their claim has been finally adjudicated or approved by the Debtor.  The Debtor and the Disbursing Agent shall have the exclusive right to dispute any claim or enter into any settlement.  The Disbursing Agent and the Debtor shall have the right to negotiate and settle and compromise any claim by offering a prepayment of their projected dividend in exchange for a discount. The Debtor may only offer

discounted settlements from excess funds and not from the required monthly payment.

   **6.9.2**  **Notice of Default-** Unless otherwise provided in this Plan, all creditors must give notice of any default to the Debtor and its counsel by written notice specifying the alleged default and the action needed to cure the default.  The Debtor shall have (30) thirty days to cure any default after receipt of that notice.  Unless otherwise provided in this Plan, No creditor may enforce any right or enforce any lien until this notice and opportunity to cure have been given.  All notices of default must be mailed to the Debtor at its last known address; AND a copy of that notice shall be mailed to Donald Robert Calaiaro at 428 Forbes Avenue, Suite 900, Pittsburgh PA 15219.  All notices under this paragraph must be sent by Certified mail, return receipt requested to be effective. The terms of these notice rights must be strictly enforced as a condition precedent to any rights under this plan.

   **6.10** **Class 10 Equity Shareholders** The equity shareholder's interest in the Debtor consist of Mark Suchevits. His ownership shall be retained under the Plan. In order to improve plan feasibility, Mark Suchevits has agreed that his post-confirmation salary for 2019 will be $108,000.00. He will not issue any dividends until class 9 has been paid under the Plan.

   **6.11** **Declaration of Default** Any Creditor shall not be able to declare a material default under this Plan, unless it has given the Debtor and the Disbursing Agent a written notice of any default by certified mail. The Debtor shall have 15 days after the mailing of the notice to cure the default.  If after the 15-day cure period the default has not been cured, the creditor shall send notice that the material default has occurred.  After mailing the notice that the material notice has occurred, that creditor may exercise all of

its rights under law to enforce its contract, collection and execution rights.

## ARTICLE 7 - RETENTION OF JURISDICTION

**7.1** The Bankruptcy Court shall, after the confirmation date and until final consummation, be entitled to exercise exclusive jurisdiction over the following matters:

(a)    To consider any modification of this Plan pursuant to Section 1127 of the Code;

(b)    To determine the allowance of all claims against the Debtor pursuant to Section 502 of the Code;

(c)    To hear and determine any objections filed within sixty (60) days after confirmation date to the allowance of any claim;

(d)    To hear and determine any adversary proceeding or contested matter, controversy, suit or dispute over which the Bankruptcy Court has jurisdiction under 28 U.S.C. §§ 157,1334.  The Debtor shall have 60 days after confirmation to file any adversary proceeding, contested matter or suit in Bankruptcy Court or in any Court with appropriate jurisdiction;

(e)    To hear and determine all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of the Plan.

(f)    To issue such orders as may be necessary for the administration and/or consummation of this Plan, including complaints to determine secured claims;

(g)    To set and determine all professional fees and other costs of administration in this Chapter 11 case; and

(h)     For such other purposes as may be set forth in the Confirmation Order.

## ARTICLE 8 - GENERAL PROVISIONS

**8.1**    <u>Amendments</u>    This Plan may be amended by the Plan Proponent at any time prior to the confirmation date and thereafter as provided in Section 1127 of the Code.

**8.2**    <u>Headings</u>    The headings included in this Plan are for the sake of convenience and reference only and shall not constitute part of this Plan for any other purpose.

**8.3** <u>Interest</u> Except as specifically set forth in the Plan or in any Final Order of the Court entered during this Chapter 11 case, interest shall be deemed not to have accrued with respect to any claim since the filing date and no payment of interest will be made pursuant to the Plan.

**8.4** <u>Final Decree</u> This Plan contemplates that the case will be closed and a Final Decree entered as soon as all of the following have occurred:

(a)    All fee applications have been filed and approved.   No fee application shall be allowed unless they have been filed prior to forty-five (45) days after the Order of Confirmation is entered;

(b)    All objections to claims and adversary actions are filed and resolved;

(c)    The Debtor has made the first payment to the administrative claimants; and

(d)    The Debtor has compiled with the Post-Confirmation Order.

## <u>ARTICLE 9 – AMENDMENT</u>

**9.1** The proponent of the Plan reserves the right to amend this Plan prior to confirmation.  If there is a substantial event that alters the feasibility of this Plan or if the Plan fails to meet the requirements of 11 U.S.C. § 1122 or if this Plan does not meet the requirements of 11 U.S.C. § 1129, before or after a ballot of creditors.

**Respectfully Submitted,**

**Dated:** April 1, 2019

**BY**: /s/ Donald R. Calaiaro
**Donald R.  Calaiaro, Esquire, PA I.D. #27538**
**dcalaiaro@c-vlaw.com**
**BY**: /s/ David Z. Valencik
**David Z. Valencik, Esquire PA ID #30836**
**dvalencik@c-vlaw.com**

**CALAIARO VALENCIK**
**428 Forbes Avenue, Suite 900**
**Pittsburgh, PA  15219-1621**
**(412) 232-0930**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

IN RE:                                          ) **Case No.** 17-25033 JAD
Apex Cleaning Supply, Inc.,                      ) **Chapter** 11
              **Debtor.**                         ) **Document No.**

### CERTIFICATE OF SERVICE OF Amended Chapter 11 Small Business Plan of Reorganization

I certify under penalty of perjury that I served the above captioned pleading on the parties at the addresses specified below or on the attached list on April 1, 2019.

**Service by E-mail:**
Apex Cleaning Supply, Inc.; mark@apexcleaningsupply.com
**Service by NEF:**
Norma Hildenbrand, on Behalf of the United States Trustee by on behalf of U.S. Trustee Office of the United States Trustee; Norma.L.Hildenbrand@usdoj.gov

The type(s) of service made on the parties (first-class mail, electronic notification, hand delivery, or another type of service) was: Electronic Notification.

If more than one method of service was employed, this certificate of service groups the parties by the type of service. For example, the names and addresses of parties served by electronic notice will be listed under the heading "Service by Electronic Notification," and those served by mail will be listed under the heading "Service by First-Class Mail."

**Dated:** April 1, 2019                    /s/ Donald R. Calaiaro
                                            **Donald R. Calaiaro, Esquire, PA I.D. #27538**
                                            **dcalaiaro@c-vlaw.com**
                                            /s/ David Z. Valencik
                                            **David Z. Valencik, Esquire,  PA I.D. #308361**
                                            **dvalencik@c-vlaw.com**
                                            **CALAIARO VALENCIK**
                                            **428 Forbes Avenue, Suite 900**
                                            **Pittsburgh, PA  15219-1621**
                                            **(412) 232-0930**